# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| |
|---|
| Mathew Varghese<br>           Plaintiff<br><br>                  V.<br><br>TODD BLANCHE, acting Attorney General of the United States; Markwayne Mullin, Director of the U.S. Department of Homeland Security; and Joseph B. Eblow, Director of the U.S. Citizenship and Immigration Services<br>           Defendants |

**Civil Action No.**

**PLAINTIFF'S ORIGINAL COMPLAINT FOR VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT**

**A#: 231982637**

## PLAINTIFF'S ORIGINAL COMPLAINT FOR VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT

The government has committed a clear abuse of process against the plaintiff. The evidence not only clearly demonstrates the government acting in an arbitrary and capricious fashion against the plaintiff but is backed by mounting case law. On or about June 5, 2025, an I-140 was filed in this case under Section 203(b)(1)(A) of the INA. Then, on August 18, 2025, a Request for Evidence was sent to the plaintiff, namely seeking further documentation of the **"beneficiary's"** extraordinary ability, which was answered with a 25-page response and over 429 pages of evidence broken down.

On December 3, 2025, this case was denied. The denial states that "*The evidence does not show that the beneficiary has received a major, internationally recognized prize or award as a result,*

1

*the evidence must demonstrate that the beneficiary has fulfilled at least three of the ten criteria listed in the regulations. USCIS will analyze the evidence that was submitted under each criterion below. [emphasis added]* (Note: The petitioner does not claim that the beneficiary meets the regulatory criteria not discussed in this decision.) *USCIS has determined that the petitioner has provided sufficient documentation to establish that the beneficiary has met the following [four] regulatory criteria:* [1] Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specialization for which classification is sought. [2] Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related. [3] The alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation [4] Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field." However, the denial does go on to state, "USCIS has determined that the petitioner provided documentation, but failed to establish eligibility for the following criteria:

• Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields.

• Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media. **Upon review, USCIS finds that the evidence does establish that at least three of the ten criteria have been met** [emphasis added]. Meeting at least three of the ten criteria alone does not establish that the beneficiary is one of the small percentages who have risen to the very top of their field of endeavor, nor that the beneficiary has sustained national or international acclaim in their field." The Denial looks further than the three elements and goes

2

*on to state "As the petitioner has submitted evidence to demonstrate the beneficiary has met at least 3 of the 10 regulatory criteria, USCIS must now examine the evidence presented in its entirety to make an initial final merits determination, of whether or not the petitioner, by a preponderance of the evidence, has demonstrated that the beneficiary possesses the high level of expertise required for the E11 immigrant classification is based on the beneficiary possessing: Sustained national or international acclaim. In determining whether the beneficiary has enjoyed "sustained" national or international acclaim, such acclaim must be maintained. A beneficiary may have achieved extraordinary ability in the past but then failed to maintain a comparable level of acclaim thereafter; and Achievements that have been recognized in the field of expertise, indicating that the beneficiary is one of that small percentage who has risen to the very top of the field of endeavor."*

## PARTIES

1. Plaintiff, Mathew Varghese, is the current I-140 EB-1A self-petitioner as an Account Technical Strategist, currently and temporarily, residing on a non-immigrant visa at 1628 NW 8th Street, Boca Raton, FL 33486; however, the petition the subject of this action was filed by his attorney, and all legal action took place at 100 Copeland Drive, Suite 4, Mansfield, MA 02048.

## JURISDICTION

2. Jurisdiction in this case is proper under 28 U.S.C. §§ 1331, 5 U.S.C. § 701 et seq., 28 U.S.C. § 2201 et seq., and 5 U.S.C. § 702. Relief is requested pursuant to those statutes.

## VENUE

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391. This is an action the agencies of the

3

United States in their official capacities. It is brought in the district where a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred.

## EXHAUSTION OF REMEDIES

The plaintiff received a notice from USCIS regarding his appeal. Within said notice, it states "Action Complete NBC ???58 2/3/26" entitled "Case Type I290B-Notice of Appeal or Motion." Therefore, apparently the appeal was terminated because no further action was taken.

## CAUSE OF ACTION

As stated, the Service Center found that the Appellant established 3 of the 10 qualifying factors enumerated in the INA, clearly stating, "**Upon review, USCIS finds that the evidence does establish that at least three of the ten criteria have been met.**" Therefore, the issue becomes whether the officer has gone beyond the statutory guidelines established in adjudicating cases under INA Section 203(b)(1)(A)? On January 28, 2026, the U.S. District Court for the District of Nebraska issued a decision in *Mukherji v. Miller*, No. 4:24-CV-3170, ruling that USCIS's two-step EB-1A adjudication framework—specifically the "final merits determination"—was unlawfully adopted and arbitrarily applied. The court vacated USCIS's denial of the plaintiff's EB-1A petition and ordered USCIS to approve the petition.

4. Post-*Loper Bright*, courts may be more likely to review the legal validity of USCIS's EB-1A "final merits determination," rather than just its factual application.

5. Where USCIS concedes that three or more regulatory criteria are met, denial at the final merits stage poses a viable APA issue.

6. The decision underscores the need to preserve appeal and litigation arguments in EB-1A filings and responses.

4

## LEGAL ARGUMENT

Where USCIS acknowledges that three or more regulatory criteria are met, the *legal basis* for denial at final merits is now a more viable APA issue, and not simply a disagreement over evidence weight. As decided in in *Mukherji v. Miller*, 4:24-cv-3170 it does not eliminate the extraordinary ability standard. It does, however, call into question the legal foundation and application of USCIS's final merits determination, particularly where USCIS concedes the regulatory criteria are met.

In the present case, you will see in the decision given by USCIS, not only did they find 3 factors, but they actually found 4! Then, USCIS determined that the plaintiff was not an outstanding "accountant." However, the Plaintiff did not even apply as an "accountant"; USCIS applied the standard of review for the plaintiff and not as an ACCOUNT Technical Strategist, which is an entirely different field altogether. Therefore, in this case, USCIS has "conceded that the regulatory criteria had been met," and the final merits determination made was an incorrect field, which is not even close to the one the plaintiff is in.

However, the field the plaintiff happens to be in is the technology field that actually works on government projects. When we ran his case through the "AI," the algorithm coincidentally came back with the position of "accountant" using the same verbiage as the denial. Therefore, it is apparent that USCIS only relied on "AI" in adjudicating his case versus ACTUALLY REVIEWING THE CASE, which is in violation of the INA because an officer did not make the adjudication. In fact, this faulty procedure due to the fact that "AI" being used instead of official human review, has NOT been established as a proven, reliable legal method of adjudication.

5

The facts that establish that the case was adjudicated by "AI" lead to mischaracterization of the plaintiff's field, resulting in an analytical error.

The denial of the plaintiff's I-140 and appeal thereafter were arbitrary and capricious in their material mischaracterization in the prior adjudication concerning the petitioner's professional role. Specifically, it clarifies the proper interpretation of the title "Account Technical Strategist" and explains how an incorrect definition led to a cascading analytical error affecting the evaluation of evidence.

The government's adjudication blatantly reflects an incorrect interpretation of the term "account" in the title "Account Technical Strategist," which has harmed the plaintiff by not providing a proper adjudication, thus severely delaying his case. Further, because the plaintiff has a previous I-140 with a priority date (under a lower employment category), this denial has also created a systemic effect and delayed the processing of his adjustment status through AC(21) portability, thus delaying his obtaining permanent residency and ultimately United States Citizenship.

The term relied upon was implicitly treated as referring to accounting or financial functions, as if the role were related to accounting, auditing, or financial reporting. This interpretation is inconsistent with industry usage. In the relevant professional context, "account" refers to enterprise customer accounts, not accounting. The correct definition of the role, which properly understood, is that an Account Technical Strategist is a client-facing technical and strategic role within the field of enterprise technology. This role typically involves designing and guiding the implementation of complex technical solutions for organizational clients, aligning

6

business objectives with technical architecture, influencing adoption strategies for large-scale systems, and serving as a bridge between technical capabilities and business outcomes. The function is closely aligned with roles such as Enterprise Solutions Architect, Technical Account Strategist, and Customer Engineering Lead. However, IT IS NOT a finance or accounting role that involves Financial Reporting, Auditing, Compliance with accounting standards, or application of accounting principles.

The **Impact of the Mischaracterization** of the two fields has lead to the incorrect interpretation of the role and mischaracterization of the petitioner's field of expertise. Thus, a gross and OBVIOUS arbitrary and capricious adjudication.

This initial error made has had a cascading effect. First, Field Distortion. The petitioner's work was evaluated under an unrelated professional framework (accounting), rather than within enterprise technology and technical strategy. Second, Misinterpretation of Evidence. The supporting documentation and contributions were assessed through the wrong lens, leading to conclusions that did not accurately reflect their nature or significance. Third, Improper Analytical Conclusions Observations and characterizations in the adjudication include generalized or pattern-based assertions that are not grounded in the evidentiary record and do not logically follow from the submitted materials.

Further, USCIS do not even have the facts of the case correct. It appears that the USCIS has the plaintiff's case confused with someone else's, because another part of it **(besides him not being an Accountant)**, states "*While the evidence demonstrates the self-petitioner's critical and leading roles for Citrix, and the projects he participated in with major companies such as Bank*

7

*of America, Verizon Communications, United Health Group, General Electric, Dell Technologies, FedEx, Exxon Mobil, Procter & Gamble, JP Morgan Chase and Pfizer the record does not reflect that the self-petitioner's employment with these companies has garnered him individual recognition outside of the company at a level consistent with sustained national or international acclaim and that he is one of that small percentage who has risen to the very top of the field of endeavor. The self-petitioner has not shown that his work for Citrix had significant impact of the field.* " The Applicant NEVER said anywhere that he had ANY projects with these companies, NOR did he claim employment **(see page 6 of 7 of the decision notice Annexed hereto as exhibit A).**

ISSUE

The issue presented is not a matter of subjective disagreement as to whether the government gave proper weight to the evidence submitted, but of objective mischaracterization and unsupported inference as to First, accepting in excess of the statutory amount of grounds required for and individual to be considered extraordinary and outstanding within their field, and at the same time deny their petition based on an incorrectly categorized field for which the critical term was interpreted without verification against industry meaning, thus the resulting definition was not grounded in the record. Therefore, subsequent analysis relied on this incorrect premise, because once the role was mischaracterized, subsequent conclusions, while internally consistent, were based on an inaccurate foundation.

8

## Factual Conclusion

The misinterpretation of "account" as relating to accounting rather than enterprise customer accounts resulted in a material mischaracterization of the petitioner's role. This definitional error incorrectly reclassified the petitioner's field, distorted the evaluation of evidence, and led to analytical conclusions not supported by the record. Accordingly, the prior analysis does not accurately reflect the nature, scope, or impact of the petitioner's work and should be reconsidered under the correct field definition

## LAW

USCIS maintains a 2-step analysis. 6 USCIS-PM, Pt. F, Ch. 2 The submission of threshold evidence of 3 of the 10 categories may not be dispositive and USCIS may require additional evidence. Letter, Skerrett, Chief, Immigrant Branch, Adjudications, HQ 204.23-C (May 20, 1993), *reprinted in* 70 No. 22 *Interpreter Releases* 750, 764–66 (June 7, 1993). *See also* 6 USCIS-PM, Pt. F, Ch. 2 [regarding first step analysis]. "Where the applicant has provided the threshold evidence in three categories, USCIS must still conduct a final merits determination that considers all the evidence to determine whether the individual is at a level of expertise indicating she is one of that small percentage who have risen to the very top of her field and has sustained national or international acclaim. However, those three factors are the basis and the building blocks that establish "what makes a person outstanding." Although, the officer can look beyond the three factors to determine if the individual is "extraordinary" within his/her field, Congress

has specifically chosen these factors as a way of determining without officers having to be subjective, and to keep uniformity of decisions. That is why, although it may be a two-prong test, once at least three of the ten factors are established, the burden is then shifted to the service center to establish why, based on a preponderance of evidence provided, the plaintiff has not established the threshold.

Pursuant to the December 22, 2010 PM-602-0005.1 Policy Memorandum SUBJECT: Evaluation of Evidence Submitted with Certain Form I-140 Petitions; Revisions to the Adjudicator's Field Manual (AFM) Chapter 22.2, AFM Update AD11-14, [which was established for the] (1) *Standard of Proof*—The standard of proof for extraordinary ability, outstanding professors and researchers, and exceptional ability is the preponderance of the evidence standard. 6 USCIS-PM, Pt. F, Ch. 2 [for the] Purpose This Policy Memorandum (PM) provides guidance regarding the analysis that U.S. Citizenship and Immigration Service (USCIS) officers who adjudicate these petitions should use when evaluating evidence submitted in support of Form I-140, Immigrant Petition for Alien Worker, filed for: • Aliens of Extraordinary Ability under section 203(b)(1)(A) of the Immigration and Nationality Act (INA); • Outstanding Professors or Researchers under section 203(b)(1)(B) INA; and • Aliens of Exceptional Ability under section 203(b)(2) INA. The purpose of this PM is to ensure that USCIS processes Form I-140 petitions filed under these employment-based immigrant classifications with a consistent standard.

**Policy:** In order to promote consistency in decision-making, USCIS officers should use a two-part approach for evaluating evidence submitted in support of all petitions filed for Aliens of Extraordinary Ability, Outstanding Professors or Researchers, and Aliens of Exceptional Ability. USCIS officers should first objectively evaluate each type of evidence submitted to determine if it

10

meets the parameters applicable to that type of evidence described in the regulations (also referred to as "regulatory criteria"). USCIS officers then should consider all of the evidence in totality in making the final merits determination regarding the required high level of expertise for the immigrant classification.

USCIS officers are reminded that the standard of proof for most administrative immigration proceedings, including petitions filed for Aliens of Extraordinary Ability, for Outstanding Professors or Researchers, and for Aliens of Exceptional Ability is the "preponderance of the evidence" standard. See Matter of Chawathe, 25 I&N Dec. 369 (AAO 2010). Thus, if the petitioner submits relevant, probative, and credible evidence that leads USCIS to believe that the claim is "more likely than not" or "probably true," the petitioner has satisfied the standard of proof. Matter of E-M-, 20 I&N Dec. 77, 79-80 (Comm'r 1989); see also U.S. v. Cardozo Fonseca, 480 U.S. 421 (1987) (discussing "more likely than not" as a greater than 50% chance of an occurrence taking place). If a petitioner provides initial evidence (including but not limited to articles, publications, reference letters, expert testimony, support letters) that is probative (e.g., does not merely recite the regulations) and credible, USCIS officers should objectively evaluate such initial evidence under a preponderance of the evidence standard to determine **whether or not it is acceptable** [emphasis added]. In other words, USCIS officers may not unilaterally impose novel substantive or evidentiary requirements beyond those set forth in the regulations, but instead should evaluate the evidence to determine if it **falls within the parameters of the regulations** [emphasis added] applicable to that type of evidence by a preponderance of the evidence standard. USCIS officers should then evaluate the evidence together when considering the petition in its entirety to determine if the petitioner has established by a preponderance of the

11

evidence that the self-petitioner or beneficiary has the required high level of expertise for the immigrant classification.

Part Two: Final Merits Determination. Meeting the minimum requirement of providing required initial evidence does not, in itself, establish that the alien in fact meets the requirements for classification as an alien of extraordinary ability under section 203(b)(1)(A) of the INA. As part of the final merits determination, the quality of the evidence also should be considered, such as whether the judging responsibilities were internal and whether the scholarly articles (if inherent to the occupation) are cited by others in the field. In Part Two of the analysis in each case, USCIS officers should evaluate the evidence together when considering the petition in its entirety to make a final merits determination of whether or not the petitioner, by a preponderance of the evidence, has demonstrated that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise, indicating that the alien is one of that small percentage who has risen to the very top of the field of endeavor.

If the USCIS officer determines that the petitioner has failed to demonstrate these requirements, the USCIS officer should not merely make general assertions regarding this failure. Rather, the USCIS officer must articulate the specific reasons as to why the USCIS officer concludes that the petitioner, by a preponderance of the evidence, has not demonstrated that the alien is an alien of extraordinary ability under section 203(b)(1)(A) of the INA.

But the final merits analysis requires that USCIS consider the totality of the evidence and when it fails to do so it will be reversed. *Matter of S-K-.* ID# 2794551 (AAO Apr. 23, 2019) [director did not consider all the three factors he found in favor of the applicant and by considering only one in making his final merits analysis he ignored the totality of the evidence]; *Berardo v.*

12

*USCIS*, 2020 WL 6161459, 10-13 (D. Or. Oct. 10, 2020) [in final merits determination USCIS did not discuss high salary and leading critical role criteria and it arbitrarily evaluated other criteria it agreed he satisfied such as judging the works of others, display of work and commercial success]. An athlete, particularly one new to major league competition, may not otherwise qualify. 56 FR 60897, 60899 (Nov. 29, 1991). USCIS is now reviewing submitted documentation to determine whether there are material misrepresentations or fraud. *Matter of ___*, LIN 06 256 51548, (AAO, NSC Apr. 9, 2010), AILA Doc. No. 10121033 [made finding and entered order that petitioner knowingly submitted documents that contained false claims in an effort to mislead USCIS and held that willful ignorance is a basis Page 2557 for fraud]. For an analysis of *how* evidence is treated in each category, *see* 6 USCIS-PM, Pt. F, Ch. 2 . For a discussion of cases involving EB-1A *see* Lee and Yale-Loehr, *A Review of Recent AAO EB-1A Extraordinary Ability Decisions*, 26 *Bender's Immigr. Bull.* 1763-75 (Nov. 15, 2021).

(1) *Standard of Proof*—The standard of proof for extraordinary ability, outstanding professors and researchers, and exceptional ability is the preponderance of the evidence standard. 6 USCIS-PM, Pt. F, Ch. 2; *Matter of Chawathe*, 25 I&N Dec. 369 (AAO 2010). "USCIS officers may not unilaterally impose novel substantive or evidentiary requirements beyond those set forth in the regulations…" USCIS Policy Memo, PM-602-0005.1, *Evaluation of Evidence Submitted with Certain Form I-140 Petitions*, (Dec. 22, 2010) at 4, AILA Doc. No. 11020231.

(2) *Prior O-1 Determination*—Eligibility for an O-1 does not automatically establish eligibility for EB-1A but where a person was granted an O-1 and the EB-1 is going to be denied the officer should explain why, notwithstanding the O-1, the petition is denied. 6 USCIS-PM, Pt. F, Ch. 2 ¶B

13

4.f. The Service has been reversed for incorrectly applying its regulations, *Buletini v. INS*, 860 F.Supp. 1222 (E.D. Mich. 1994) [*pre-Kazarian*] and abusing its discretion. *Muni v. INS*, 891 F.Supp. 440 (N.D. Ill. 1995) [reversing denial for professional hockey player where INS misapplied definition and based its decision on grounds he was not an all-star or one of highest paid players; also emphasized importance of team's success]; *Grimson v. INS*, 934 F.Supp. 965 (N.D. Ill. 1996) [reversing INS where he was found to be one of best hockey "enforcers"]; *Matter of Price*, 20 I&N Dec. 953 (AAU 1994) [golfer ranked 10th best in professional tour qualifies]; *Matter of ___*, VSC, EAC 02-099-53226 (AAO Mar. 24, 2003) [reversing denial of Taekwondo instructor because the standard is "sustained national acclaim" and not being at the "top of their field"] *reported in* 8 *Bender's Immigr. Bull.* 1529 (Sept. 15, 2003). *See also Berardo v. USCIS*, 2020 WL 6161459 (D. Or. Oct. 10, 2020) [denial of stop-motion animator was arbitrary and capricious, an abuse of discretion and contrary to law]. *But see Kazarian v. USCIS*, 596 F.3d 1115 (9th Cir. 2010) [rejecting USCIS's view of 2 of the 4 categories presented, but finding harmless error because USCIS's determination was valid as to the other two categories, thereby leaving the Ph.D. in theoretical physics with only two of the three categories needed]; *Etsy, Inc. v. Jaddou*, 2023 WL 3689555 (D. Neb. May 25, 2023) [rejecting procedural and *ultra vires* challenges to the *Kazarian* policy]; *Visinscaia v. Beers*, 4 F.Supp.3d 126 (D.D.C. 2013) [USCIS did not abuse its discretion in denying ballroom dancer where it found she did not have a one-time major international achievement or 3 of the 10 categories]. *See also Rijal v. USCIS*, 772 F.Supp.2d 1339 (W.D. Wash. 2011), *aff'd*, 683 F.3d 1030 (9th Cir. 2012) [upholding denial despite USCIS's improper application of the standards because there was no prejudice].

14

*Matter of Chawathe*, 25 I&N Dec. 369 (AAO 2010). "USCIS officers may not unilaterally impose novel substantive or evidentiary requirements beyond those set forth in the regulations..." USCIS Policy Memo, PM-602-0005.1, *Evaluation of Evidence Submitted with Certain Form I-140 Petitions*, (Dec. 22, 2010) at 4, AILA Doc. No. 11020231.

Although only 3 of the 10 factors need to be determined, the plaintiff only **sufficiently** documented 4. Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specialization for which classification is sought pursuant to 8 CFR Sec. 204.5(h)(3)(iv), **and** 2. Evidence of the alien's authorship of scholarly articles in the field, professional or major trade publications or other major media pursuant to 8 CFR Sec. 204.5(h)(3)(vi).

At the outset, USCIS expressly acknowledged that the plaintiff satisfied four separate regulatory criteria. These findings are not incidental; they are affirmative determinations that the evidence establishes professional distinction, peer recognition, and sustained impact.
Despite conceding four criteria, USCIS discounted the same evidence at final merits using undefined, conclusory language and extra-regulatory benchmarks not found in statute or regulation.

Putting aside the fact that miscategorized the plaintiff's position, and confused the history of his employment with another (as stated earlier), the issue of "considering the petition in its entirety to make a final merits determination of whether or not the petitioner, by a preponderance of the evidence, has demonstrated that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise" has been recently covered in a case on point MUKHERJI v. Miller, 4:24-cv-03170-JFB-RCC in the Nebraska

15

District Court. In that case, it was held that "USCIS now follows a two-step analysis of the petitioner's evidence in adjudicating EB-1A petitions. First, it determines whether the petitioner provided evidence of a one-time achievement or evidence satisfying at least three of the ten regulatory criteria. See Kazarian v. U.S. Citizenship & Immigr. Servs., 596 F.3d 1115, 1121 (9th Cir. 2010). If so, USCIS then considers the totality of the evidence to make a final merits determination regarding the petitioner's qualifications and achievements. Volume 6, Part F, Chapter 2 of the USCIS Policy Manual. At this second step, the evidence must demonstrate "sustained national or international acclaim" and establish that the petitioner is one of a small percentage who has risen to the very top of their field of endeavor to be eligible for extraordinary ability designation. 8 U.S.C. § 1153(b)(1)(A)(i); 8 C.F.R. § 204.5(h)(2)." As in the present case the petitioner demonstrated more factors than required and was denied based on the "totality of the case" and the court stated "As for the Senate Bill that actually and ultimately ended up becoming the law, the House Conference Report says absolutely nothing about a requirement that persons seeking priority worker extraordinary ability classification need to be part of "that small percentage of individuals who have risen to the very top of their field" or some other formulation to that effect. H.R. CONF. REP. 101-955, 101st Cong., 2d Sess. (Oct. 26, 1990). 4:24-cv-03170-JFB-RCC Doc # 24 Filed: 01/28/26 Page 11 of 17 - Page ID # 1761 12 Further, the Court finds the agency unlawfully adopted its "final merits determination" test without notice and comment rulemaking. The APA, 5 U.S.C. § 553, requires that its notice and comment rulemaking procedures be followed when an agency creates "'legislative' or 'substantive' rules." Lincoln v. Vigil, 508 U.S. 182, 196 (1993); Green Rock LLC v. Internal Revenue Serv., 104 F.4th 220 (11th Cir. 2024) ("To enact regulations that have the force of law, a federal agency ordinarily must abide

16

by the notice-and-comment procedures prescribed in the Administrative Procedure Act, 5 U.S.C. § 553(b).")." The Agency initially determined that this was substantive. Years later, the Agency changed this determination and proceeded to adopt the new standards without following any rulemaking process. The Court finds the Agency failed to follow its own rules in this regard. In addition, the agency arbitrarily and capriciously adopted its "final merits determination" for failure to acknowledge and reason through the fact that it was changing its adjudicative policy. "Agencies are free to change their existing policies as long as they provide a reasoned explanation for the change." Encino Motorcars, LLC v. Navarro, 579 U.S. 211 (2016) (citations omitted). "But the agency must at least 'display awareness that it is changing position' and 'show that there are good reasons for the new policy.'" Id. "In such cases it is not that further justification is demanded by the mere fact of policy change; but that a reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior policy." Id. That did not happen in this case. One of the basic procedural requirements of administrative rulemaking is that an agency must give adequate reasons for its decisions [**as in the present case**]. The agency "must examine the relevant data and articulate a satisfactory explanation for its action including a rational 4:24-cv-03170-JFB-RCC Doc # 24 Filed: 01/28/26 Page 12 of 17 - Page ID # 1762 13 connection between the facts found and the choice made [**which in the present case don't even match, let alone have a connection**]." Motor Vehicle Manufacturers Association of the United States, Inc., 463 U.S. at 43 (internal quotation marks omitted). That requirement is satisfied when the agency's explanation is clear enough that its "path may reasonably be discerned." Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974). But where the agency has failed to provide even that minimal level of analysis, its action is arbitrary and capricious and so cannot

17

carry the force of law." Then the court went further in applying the mishandling of the EB-1, such as the plaintiff's and held that it violates the APA by stating "The law requires that "agenc[ies] must at least 'display awareness that it is changing position' and 'show that there are good reasons for the new policy,'" Encino Motorcars, LLC, 579 U.S. 211 (citation omitted), such that "an unexplained inconsistency in agency policy is a reason for holding an interpretation to be an arbitrary and capricious change from agency practice," id. "An arbitrary and capricious regulation [interpretation 4:24-cv-03170-JFB-RCC Doc # 24 Filed: 01/28/26 Page 13 of 17 - Page ID # 1763 14 of a regulation] of this sort is itself unlawful and receives no Chevron[/Auer] deference." Encino Motorcars, LLC, 579 U.S. 211 (citation omitted). Finally, the Court must acknowledge the recent Loper case wherein the Supreme Court recently diminished the validity of Chevron. As stated in Loper: The APA thus codifies for agency cases the unremarkable, yet elemental proposition reflected by judicial practice dating back to Marbury: that courts decide legal questions by applying their own judgment. It specifies that courts, not agencies, will decide "all relevant questions of law" arising on review of agency action, § 706 (emphasis added)—even those involving ambiguous laws—and set aside any such action inconsistent with the law as they interpret it. And it prescribes no deferential standard for courts to employ in answering those legal questions. That omission is telling, because Section 706 does mandate that judicial review of agency policymaking and factfinding be deferential. See § 706(2)(A) (agency action to be set aside if "arbitrary, capricious, [or] an abuse of discretion"); § 706(2)(E) (agency factfinding in formal proceedings to be set aside if "unsupported by substantial evidence"). Loper Bright Enterprises, 603 U.S. at 391–92. In summary, the Court finds the adoption of the two-tiered system by the Agency did not follow the required law. First, there was no notice discarding the policy that had

18

been in place for 20 years. Second, the Agency changed its position adopting the legal analysis of the Ninth Circuit in Kazarian. Third, the final merits determination provided no notice and comment. Fourth, the Court finds that this change after 20 years is legislative, not interpretive, and even the Agency itself at one time found it to be legislative/substantive. Fifth, the Agency failed to clearly articulate a clear and justified reason for the policy change, after 20 years of using its original policy. Adequate reasons were simply not articulated by the Agency. This clearly violates the legal requirements set forth herein. **Such failure makes the decision arbitrary and capricious** [emphasis added]. This is a longstanding policy. The Agency is free to change their policies in some circumstances, but 4:24-cv-03170-JFB-RCC Doc # 24 Filed: 01/28/26 Page 14 of 17 - Page ID # 1764 15 they must articulate their reasoning. Last, the Court determined in Loper that there is very limited Chevron deference now. All questions of law will be determined by the Court. These are clearly questions of law, not facts. Accordingly, for these reasons, the Court finds the two-tier analysis was not valid at its inception. E. Arbitrary and Capricious Finding Although the above findings are more than sufficient to find the Agency was arbitrary and capricious, in the alternative, the plaintiff argues that she clearly met the requirements set forth by Congress. The plaintiff presents APA claims that Defendant USCIS improperly rejected evidence of her qualifications under 8 C.F.R. § 204.5(h)(3). Plaintiff filed an I-140 petition seeking to qualify as an individual of extraordinary ability under 8 U.S.C. § 1153(b)(1)(A). USCIS denied Plaintiff's petition for the "extraordinary ability" immigrant classification. Plaintiff challenges that finding as arbitrary and capricious under the Administrative Procedure Act ("APA"). That classification is defined by statute as follows: An alien is described in this subparagraph if— (i) the alien has extraordinary ability in the sciences, arts, education, business, or athletics which has been

19

demonstrated by sustained national or inter- national acclaim and whose achievements have been recognized in the field through extensive documentation, (ii) the alien seeks to enter the United States to continue work in the area of extraordinary ability, and (iii) the alien's entry into the United States will substantially benefit prospectively the United States. 8 U.S.C. § 1153(b)(1)(A). The Agency found with regard to Plaintiff in this case that: (1) that she has demonstrated her "[d]ocumentation of [her] receipt of lesser nationally or internationally recognized prizes or awards for excellence in 4:24-cv-03170-JFB-RCC Doc # 24 Filed: 01/28/26 Page 15 of 17 - Page ID # 1765 16 the field of endeavor," § 204.5(h)(3)(i); (2) "[p]ublished material about [her] in professional or major trade publications or other major media, relating to [her] work in the field for which classification is sought," § 204.5(h)(3)(iii); (3) "[e]vidence of [her] participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought," § 204.5(h)(3)(iv); (4) "[e]vidence of [her] original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field," § 204.5(h)(3)(v); and (5) "[e]vidence that [she] has performed in a leading or critical role for organizations or establishments that have a distinguished reputation," § 204.5(h)(3)(viii). Filing No. 20 at 14, see also Filing No. 15 at 11. The Agency then determined that Plaintiff failed to support the criterion: "§ 204.5(h)(3) ('Documentation of [her] membership on [sic] associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields')." Filing No. 20 at 15, see also Filing No. 15 at 18. The Court is very aware of its limited review in this case. However, the Court determines that the defendant has acted in an arbitrary and capricious manner. The plaintiff submitted substantial documentation of her excellence, including most

20

impressive letters of recommendation touting her high-level contributions in her journalistic specialty; Plaintiff submitted a number of authorships and co-authorships in her areas of research, although many were discounted by the Agency; and she clearly has a very high level of achievement. The Court has carefully reviewed the decision of the reviewing officer. It is unclear as to why the officer determined that Plaintiff did not meet the "Excellent" level. There is no articulated standard, objective, or specific criteria upon which this Court can judge why she did not meet the standards. "If the officer determines that the petitioner has failed to demonstrate eligibility, the officer should not merely make general assertions regarding this failure. Rather, the officer must articulate the specific and legal reasons as to why the officer concluded that the petitioner has not demonstrated by a preponderance 4:24-cv-03170-JFB-RCC Doc # 24 Filed: 01/28/26 Page 16 of 17 - Page ID # 1766 17 of the evidence that the person has extraordinary ability." USCIS Policy Manual, Vol. 6, Part F, Chapter 2 (December 22, 2025), https://www.uscis.gov/policy-manual/volume-6- part-f-chapter-2. If the reviewing officer fails to delineate the specific and legitimate reasons for the denial, then that is an arbitrary and capricious decision. Here, the reviewing officer failed to articulate the required standard and the plaintiff's failure to meet that standard. Nor does the statute say anything about an individual being required to stay indefinitely at the top of their field. It is clear that the Plaintiff in this case was at the top of her field. No one argues that is not accurate. The Agency based its decision on whether she continuously received awards recognizing her status or kept up with that level of production. The Court finds nothing in the statutory scheme that would support such a finding. Accordingly." In the Plaintiff's case, there is even more of a disconnect between the government's adjudication of his case and the lawful grounds for denial as set forth in an EB-1 case. Therefore, the arbitrary and

21

capricious actions of the government are clearly demonstrated by the outlined facts as they have been detailed by the Plaintiff above.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court:

Issue a declaration that USCIS's denial of plaintiffs' Form I-140 solely on the basis of Plaintiffs' not falling into the extraordinary ability category for an approved Form I-140 is arbitrary, capricious, and not in accordance with the law;

1. Enter an Order compelling defendants to accept plaintiffs' Form I-140 as one that has proven to fall within the parameters of the EB-1A extraordinary ability category;

2. Award the plaintiffs his reasonable attorneys' fees and costs under the Equal Access to Justice Act 28 U.S.C. § 2412, 5 U.S.C. § 504, or any other applicable law; and

4. Award any other such relief as the Court deems just, equitable, and proper.

Respectfully submitted,

/s/ *Seth D. Miller*

Seth D. Miller, Esquire
Attorney for Plaintiff
Miller & Associates, P.C.
100 Copeland Drive
Suite 100
Mansfield, MA 02048
(508) 339-1155
seth@millerandassociateslaw.com
(BBO# 629773)

22

CERTIFICATE OF SERVICE

I, Seth D. Miller, hereby certify that I have served a copy of this document electronically, upon:

U.S. Department of Homeland Security
U.S. Citizenship & Immigration Service
Office of the District Counsel
JFK Federal Building- Rm. 425
Government Center
Boston, MA 02203

U.S. Citizenship and Immigration Services
JFK Building- Room E-160
Government Center
Boston, MA 02203
Attn.: Denis Riordan, District Director

U.S. Attorney's Office
U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210

Attorney General Todd Blanche
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530-0001

Markwayne Mullin, Secretary
U.S. Department of Homeland Security

Joseph B. Eblow,
Director of U.S. Citizenship and Immigration Services
5900 Capital Gateway Dr.
Camp Springs, MD 20588.

23